UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

AMY GRECO,

                             Plaintiff,

      -against-

SCO FAMILY OF SERVICES and SUZY
MOELLER,

                        Defendants.
-------------------------------------------------------------X

**AMENDED COMPLAINT**

Docket No.: 21-cv-06417

Jury Trial Demanded

Plaintiff AMY GRECO, by her attorneys, the Law Offices of Edmond J. Pryor, hereby complains of the defendants, SCO FAMILY OF SERVICES and SUZY MOELLER as follows:

## NATURE OF THE ACTION

1.      Plaintiff complains of violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 - 12213 and New York State Executive Law § 296(6), seeking relief and damages to redress the injuries Plaintiff has suffered as a result of being discriminated against and wrongfully terminated based upon her disability.

2.      The ADA Amendments Act of 2008 (ADAAA), as amended, effective January 1, 2009, broadened the definitions of disability to make it easier for individuals to be covered under the ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of substantially limiting impairment; or (3) being regarded as having a disability, as these terms are redefined, and it is easier to be covered under the law, as amended.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction based on 28 U.S.C. § 1331 and 42 U.S.C. §§ 12101 - 12213 and supplemental jurisdiction on Plaintiff's state law claims under 28 U.S.C. § 1367.

4.      Venue is proper in the Eastern District of New York under 28 U.S.C. §1391 as SCO

Family of Services is located in the Eastern District of New York.

## PARTIES

5.      Plaintiff is a thirty-one-year-old female, residing in Nassau County, State of New York.

6.      Defendant SCO Family of Services (hereinafter "SCO") is a domestic not for profit

corporation organized and existing under and by virtue of the laws of the State of New York,

having its principal place of business in Nassau County, New York

7.      SCO employs more than 50 employees within Nassau County, New York. SCO holds

itself out to the general public as a facility that specializes in the care of mentally disabled

individuals, with a place of business at Westbrook Preparatory School, 231 St. Brigid's Lane,

Westbury, New York 11590 ("Westbrook").

8.      Defendant Suzy Moeller is an employee of SCO.

## MATERIAL FACTS

9.      Plaintiff received a bachelor's degree from Adelphi University in the field of Psychology.

Plaintiff also received a master's degree in the field of Behavior Analysis.

10.     In or about November 2013, SCO hired Plaintiff as a Behavior Specialist. Subsequently,

in or about November 2016, Plaintiff was promoted to the position of Residential Counselor.

11.     Plaintiff was a qualified individual able to perform her job duties. She attended meetings,

was consistently prepared with data, was timely, never received a negative performance review,

was never "written up," and routinely exceeded expectations.

12.     In her role as Behavior Specialist, Plaintiff collected data, created behavior plans, and

provided crisis support at Westbrook Preparatory School. "Crisis Support" was the term of art

SCO used to refer to the restraining of its residents when they would become violent. Some of SCO's residents were teenagers that were larger than Plaintiff.

13.     Plaintiff reported to Macdaney Prophet ("Mac") at Westbrook.

14.     Frequently, the cafeteria at Westbrook needed help from non-cafeteria staff because its chefs were unreliable and often quit, routinely leaving vacancies that needed to be filled.  This non-cafeteria staff help was necessary, so that the students at Westbrook could eat. Plaintiff intermittently volunteered to help with cafeteria duties from November 2016 through and including July 22, 2020. In Plaintiff's capacity as "Chef," she was responsible for food ordering, menu planning, preparing two meals per day and clean up. In addition to a normal Chef's work responsibilities, Plaintiff also taught students at Westbrook how to cook.

15.     On July 22, 2020, Plaintiff was carrying boxes of food through a stairwell of Westbrook when she slipped and fell on water. As a result of the accident, she was seriously injured.

16.     As a result of the accident, Plaintiff suffered, inter alia, a right lateral malleolar (ie, ankle) fracture. Soon after, Plaintiff learned that she required surgery to treat her injuries. On August 4, 2020, Plaintiff underwent surgery.

17.     Plaintiff initially informed SCO and, specifically, Macdaney Prophet that she was incapable of doing her previous job duties due to her injury, difficulty walking and fear of potential exacerbation of her injury. Plaintiff worked with unpredictable adults with disabilities and could not perform "crisis support" of residents of Westbrook due to the risk of reinjury.

18.     Plaintiff provided SCO with notes from medical providers, namely, Dr. Patel and Dr. Chapter, that stated she could not return to work due to her disability. Plaintiff was under the supervision of these medical providers who periodically wrote notes to apprise SCO of Plaintiff's condition. Plaintiff's medical providers issued these notes because they were

concerned about the risk of exacerbating Plaintiff's condition should she have to engage in crisis support at SCO. Plaintiff transmitted these notes to the human resources department, specifically Juliette Dieujuste and Danielle Motto.

### Plaintiff's Impairment Substantially Limits a Major Life Activity

19.     As noted above, Plaintiff's diagnosis and treatment for her injury shows that a major life activity, walking, was substantially limited.

20.     Under C.F.R. § 1630.2(i)(1)(i) "major life activities" include performing manual tasks, walking and lifting, among other things.

21.     SCO was aware of Plaintiff's diagnosis and resulting disability because she was in regular correspondence with the human resources department regarding her health status.

### Defendants' Adverse Employment Action was Because of Plaintiff's Impairment

22.     Plaintiff corresponded with SCO's human resources department regarding the status of her impairment and whether her status had changed to allow her to return to her original position.

23.     Plaintiff utilized all of the Family and Medical Leave Act ("FMLA") time off that was available to her. Upon the expiration of the medical related FMLA time off, human resources asked Plaintiff once more if she could return to her position. When Plaintiff stated that her medical status prohibited her from returning to the role she previously held, specifically the duty of crisis support, she was terminated.

24.     Defendant SCO had eliminated the crisis support responsibility from multiple other employees' job duties in the past when employees were overweight or pregnant

25.     Defendant unlawfully failed to provide a reasonable accommodation based upon Plaintiff's physical impairment.

26.     Plaintiff's impairment qualifies her under Federal and New York State Law as a disabled individual protected from disparate treatment.

27.     Plaintiff was a qualified, capable and exemplary employee who was successful at SCO before her impairment prevented her from performing certain duties she performed before her accident. Defendant terminated Plaintiff solely because her impairment prevented her from performing crisis support duties.

28.     Plaintiff did not receive any compensation from Defendant beyond her March 23, 2021 termination date.

29.     Plaintiff's annual salary with SCO was $42,000.00, plus medical insurance coverage, including vision and dental, a retirement plan and other benefits.

30.     As a result of the unlawful termination, Plaintiff has past lost earnings and benefits.

31.     Further, as a result of the unlawful termination, Plaintiff will suffer future lost earnings and benefits.

32.     As a result of the unlawful acts and conduct complained of herein, Plaintiff has suffered pecuniary economic losses, as well as compensable emotional pain, suffering, and emotional loss of enjoyment of life.

33.     Plaintiff seeks punitive damages against Defendant because its conduct was malicious, willful, outrageous and conducted with full knowledge of the law.

34.     On August 25, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC").

35.     On August 30, 2021, the EEOC issued a Right to Sue Letter to Plaintiff. A true and accurate copy of the Right to Sue Letter is attached hereto as **EXHIBIT 1.**

## FIRST CLAIM
## FAILURE TO ACCOMMODATE UNDER THE ADA

36.     Plaintiff repeats and realleges paragraphs 1 through 35 as if more fully set forth herein.

37.     SCO is an employer subject to the ADA and all amendments thereto.

38.     At all relevant times, SCO was an employer with more than fifteen employees.

39.     Plaintiff's ankle injury is a protected disability under the ADA and all amendments
thereto.

40.     At all relevant times prior to her work-related injury, Plaintiff was capable of performing
all of the essential functions of her job either with or without a reasonable accommodation.

41.     SCO knew that the only reason Plaintiff could not return to work is because she could not
return to her previous role and engage in crisis support duties due to her disability.

42.     SCO never offered Plaintiff a reasonable accommodation to her job duties before her
termination.

43.     Any alleged non-discriminatory reason is nothing more than a pretext so that SCO and its
agents could attempt to mask their deliberate actions.

44.     By reason of SCO's actions and inactions, whereby SCO and its agents have engaged in
unlawful discriminatory practices, Plaintiff has been severely damaged.

45.     As a result of SCO's discriminatory acts, Plaintiff has suffered loss of economic benefits,
salary and employment prospects.

46.     Plaintiff has also been damaged physically and emotionally, including humiliation, loss
of self-esteem and has been otherwise damaged.

47.     Because of the actions complained of, Plaintiff is entitled to appropriate injunctive and
monetary relief, including compensatory and punitive damages in an amount to be determined at

trial, together with appropriate interest thereon, and an award of attorneys' fees, costs and disbursements.

## SECOND CLAIM
## FAILURE TO ACCOMMODATE UNDER THE NYSHRL

48.     Plaintiff repeats and realleges paragraphs 1 through 47 as if more fully set forth herein.

49.     By its actions, SCO and its agents have failed to accommodate Plaintiff reasonably, constituting an unlawful employment practice on account of Plaintiff's disabilities, in violation of Article 15 of the New York State Executive Law, including § 296 and § 297.

50.     SCO and its agents cannot demonstrate any legitimate nondiscriminatory reason for the actions complained of herein, nor can their actions be otherwise justified under Article 15 of the New York State Executive Law, including § 296 and § 297.

51.     Any alleged non-discriminatory reason is nothing more than a pretext so that SCO and its agents could attempt to mask their actions.

52.     As a result of SCO's discriminatory acts, Plaintiff has suffered loss of economic benefits, salary and employment prospects.

53.     Plaintiff has also been damaged physically and emotionally, including humiliation, loss of self-esteem and has been otherwise damaged.

54.     Because of the actions complained of, Plaintiff is entitled to appropriate injunctive and monetary relief, including compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon, and an award of attorneys' fees, costs and disbursements.

## THIRD CLAIM
## DISABILITY DISCRIMINATION UNDER FEDERAL AMERICANS WITH DISABILITIES ACT

55.     Plaintiff repeats and realleges paragraphs 1 through 54 as if more fully set forth herein.

56.     The Americans with Disabilities Act, 42 U.S.C. § 12112 et seq. ("ADA") provides that:

> "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

57.     Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12111(8).

58.     Defendant violated 42 U.S.C. § 12111 and § 12112 and discriminated against Plaintiff because of her disability by discharging her because of her impairments.

59.     SCO and its agents cannot demonstrate any legitimate nondiscriminatory reason for the actions complained of herein, nor can their actions be otherwise justified under the ADA, 42 U.S.C. § 12203.

60.     Any alleged non-discriminatory reason is nothing more than a pretext so that SCO and its agents could attempt to mask their actions.

61.     As a result of SCO's discriminatory acts, Plaintiff has suffered loss of economic benefits, salary and employment prospects.

62.     Plaintiff has also been damaged physically and emotionally, including humiliation, loss of self-esteem and has been otherwise damaged.

63.     Because of the actions complained of, Plaintiff is entitled to appropriate injunctive and monetary relief, including compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon, and an award of attorneys' fees, costs and disbursements.

## FOURTH CLAIM
## DISABILITY DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW

64.     Plaintiff repeats and realleges paragraphs 1 through 63 as if more fully set forth herein.

65.     SCO and its agents violated New York State Executive Law § 296 and §297 in that SCO and its agents discriminated against Plaintiff because of her protected disability.

66.     Plaintiff's leg injury constitutes a protected disability.

67.     SCO and its agents cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can its actions be otherwise justified under the NYSHRL.

68.     Any alleged non-discriminatory reason is nothing more than a pretext so that SCO and its agents could attempt to mask their actions.

69.     As a result of SCO's discriminatory acts, Plaintiff has suffered loss of economic benefits, salary and employment prospects.

70.     Plaintiff has also been damaged physically and emotionally, including humiliation, loss of self-esteem and has been otherwise damaged.

71.     Because of the actions complained of, Plaintiff has become entitled to appropriate injunctive and monetary relief, including compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon, and an award of attorneys' fees, costs and disbursements.

## FIFTH CLAIM
## AIDING & ABETTING DISABILITY DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW

72.     Plaintiff repeats and realleges paragraphs 1 through 71 as if more fully set forth herein.

73.     New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice, "for any person to aid, abet, incite, compel, or coerce the doing of any acts forbidden under this article, or attempting to do so."

74.     Defendant SCO engaged in an unlawful discriminatory practice under New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling and/or coercing the discriminatory termination of Plaintiff.

75.     As a result of SCO's discriminatory acts, Plaintiff has suffered loss of economic benefits, salary and employment prospects.

76.     Plaintiff has also been damaged physically and emotionally, including humiliation, loss of self-esteem and has been otherwise damaged.

77.     Because of the actions complained of, Plaintiff is entitled to appropriate injunctive and monetary relief, including compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon, and an award of attorneys' fees, costs and disbursements.

## SIXTH CLAIM
## DEFAMATION

78.     Plaintiff repeats and realleges paragraphs 1 through 77 as if more fully set forth herein.

79.     Plaintiff Amy Greco is neither a public figure/public official nor a "limited purpose figure."

80.     In or about April 2021, Defendant Suzy Moeller, a SCO employee, told Amy LaCentra, a client of SCO and potential client of Plaintiff in her personal capacity, that Plaintiff was sexually interested in Ms. LaCentra's son, an individual with developmental disabilities, and to be wary of Plaintiff.

81.     The foregoing statements made by Defendant Moeller about Plaintiff were not and are not true in that Plaintiff maintained a strictly professional relationship with all of her clients and never exhibited any sexual interest in Ms. LaCentra's son.

82.     The foregoing statements expose Plaintiff to public contempt, ridicule, aversion or disgrace, or induces an evil opinion of Plaintiff in the minds of right-thinking persons and deprives Plaintiff of friendly discourse in society.

83.     Defendant Moeller published the foregoing false statements with negligence, recklessness and gross negligence because of their defamatory content.

84.     As a result of the defamatory publication, Plaintiff has been forced to explain that the foregoing defamatory statements were and are, in fact, false and to try to clear up any confusion regarding the defamatory statements.

85.     As a result of the defamatory publication, Plaintiff has suffered impairment of reputation, as well as mental and emotional distress and anguish, anxiety, depressed mood, sleep deprivation and more.

86.     The foregoing defamatory publication has been repeated by other employees of SCO among themselves and to others, including communities in which Plaintiff works.

87.     Based on the foregoing, Plaintiff has been damaged in a sum that exceeds the jurisdictional limits of all lower courts.

## SEVENTH CLAIM
## DEFAMATION PER SE

88.     Plaintiff repeats and realleges paragraphs 1 through 87 as if more fully set forth herein.

89.     The defamatory statements made by Defendant Moeller, as set forth in Paragraphs 84 to 93 constitute defamation per se because they are designed to damage Plaintiff in her profession as a caretaker of developmentally disabled individuals.

90.     Based on the foregoing, Plaintiff has been damaged in a sum that exceeds the jurisdictional limits off all lower courts.

## EIGHTH CLAIM

## RETALIATION UNDER THE FAMILY AND MEDICAL LEAVE ACT

91.     Plaintiff repeats and realleges paragraphs 1 through 90 as if fully set forth herein.

92.     Suzy Moeller's defamatory statements were motivated by Plaintiff's exercise of her

rights under the Family and Medical Leave Act and constitute retaliation.

93.     Section 105 of the FMLA, 29 USCS § 2615, section 825.220 of the FMLA and 29 CFR §

825.220 prohibit an employer from retaliating against an employee for having exercised any

FMLA right.

94.     Defendant engaged in an unlawful discriminatory practice under 29 USC § 2615 and 29

CFR § 825.220 by illegally retaliating against Plaintiff and terminating her employment for

exercising her rights under the FMLA.

95.     As a result of SCO's discriminatory acts, Plaintiff has suffered loss of economic benefits,

salary and employment prospects.

96.     Plaintiff has also been damaged physically and emotionally, including humiliation, loss

of self-esteem and has been otherwise damaged.

97.     Because of the actions complained of, Plaintiff has become entitled to appropriate

injunctive and monetary relief, including compensatory and punitive damages in an amount to be

determined at trial, together with appropriate interest thereon, and an award of attorneys' fees,

costs and disbursements.

98.     As a result of SCO's discriminatory acts, Plaintiff has suffered loss of economic benefits,

salary and employment prospects.

99.     Plaintiff has also been damaged physically and emotionally, including humiliation, loss

of self-esteem and has been otherwise damaged.

100.    Because of the actions complained of, Plaintiff is entitled to appropriate injunctive and monetary relief, including compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon, and an award of attorneys' fees, costs and disbursements.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements in this action; and for such other and further relief as the Court deems just and proper.

Dated: Bronx, New York
     May 20, 2022

    LAW OFFICES OF EDMOND J. PRYOR

    By:  Edmond J. Pryor, Esq.
    292 City Island Avenue
    Bronx, New York 10464
    (718) 829 – 0222